THE PHILADELPHIA FIRE INSURANCE COMPANY ET AL.

v.

THE CENTRAL NATIONAL BANK OF CHICAGO ET AL.

1. CREDITOR'S BILL.—OFFICE OF—EXTENT OF EQUITY JURISDICTION IN.—Although a creditor's bill filed pursuant to a statute is a bill for relief as well as discovery, the relief seems to be made dependent upon the discovery; and when the answer to such bill discovers assets of the judgment creditor in the hands of the defendant, a court of chancery may apply such assets to the payment of the judgment. But where the answer not only fails to discover, but denies the possession of assets, the allegations in the answer cannot be traversed, and the court of chancery proceed to try such traverse and grant relief in case the defendant is proved to be in possession of assets of the judgment creditor.

2. JURISDICTION IN CASE OF FRAUD.—Where a bill in the nature of a creditor's bill is filed for the purpose of setting aside a fraudulent conveyance of property, a court of chancery obtains jurisdiction on the ground of fraud, as against all parties in any way chargeable with the perpetration of the fraud, and in such a case the court of chancery will wrest the property so fraud-ulently conveyed, from the possession of the guilty parties, and hand it over to the creditors to whom it rightfully belongs.

3. PARTIES NOT CHARGED WITH FRAUD.—Where, however, no fraud is charged in the bill as to particular defendants, and no other ground of equi-table jurisdiction is alleged beyond a mere allegation of possession of assets, or indebtedness to the judgment debtor, and the answer traverses such alle-gations, the bill cannot be maintained as against such defendants.

4. STATEMENT — PRACTICE IN CERTAIN CASES. — The complainants charged certain of the defendants with a fraudulent conveyance of property, and with fraudulently procuring an insurance thereon in the name of one of the defendants, and charged a secret trust in favor of the judgment debtor; they also alleged a liability on the part of the defendant insurance companies to pay for losses on policies issued by them, and sought in their bill to reach

Philadelphia Fire Ins. Co. et al. v. Central National Bank of Chicago et al.

the insurance so claimed to be due. It was not charged that the insurance companies participated in the fraud. The insurance companies answered, denying any liability on their policies. Under such a state of facts the court has power to order an assignment of the policies to a receiver, and clothe him with authority to bring suits at law for the recovery of the insurance so claimed to be due. It has no authority, as in this case, in a suit in the nature of a creditor's bill, to try the question of the liability of some thirty different defendant insurance companies upon policies issued by them, and order a payment of the insurance, and thus deprive the defendants of a separate trial by jury.

APPEAL from the Superior Court of Cook county ; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. HENRY C. WHITNEY, and Mr. E. R. BOWEN, for appellants; against the jurisdiction of a court of equity to compel the insurance companies to try their cases in that forum, and contending for the right to a trial at law, cited Rev. Stat. Chap. 22, § 40.

That as to the insurance companies the action was premature, the losses by the terms of the policies not being due : Nickerson v. Babcock, 29 Ill. 497; Daniels v. Osborn, 71 Ill. 169.

That the policies were void on account of concealment of facts material to the risk: Day v. Charter Oak Ins. Co. 4 Benn. Ins. Cas. 727; Boggs v. Am. Ins. Co. 4 Benn. Ins. Cas. 464; Phillips on Insurance, 277; Gould v. Ins. Co. 47 Me. 403; Carpenter v. Ins. Co. 1 Story, 57; Columbian Ins. Co. v. Lawrence, 2 Pet. 25; Smith v. Williams, 2 Caines' Cas. 110; Lee v. Ins. Co. 3 Gray, 583; 1 Phillips on Insurance, 304; 4 Benn. Ins. Cas. 481.

That the assured must own the property or have an insurable interest therein: Busch v. Sinnissippi Ins. Co. 28 Ind. 64; Sawyer v. Mayhew, 51 Ill. 398; Fowler v. New York Ins. Co. 26 N. Y. 422; Peabody v. Washington Ins. Co. 20 Barb. 339; Freeman v. Fulton Ins. Co. 38 Barb. 247; Tallman v. Atlantic Ins. Co. 29 How. Pr. 71; Sweeney v. Franklin Ins. Co. 20 Pa. St. 337.

If the assured have no interest, it will be a mere wager policy, and void: Howard v. Ins. Co. 3 Denio, 303; In the matter of Kip, 4th ed. Ch'y, 94; Ætna Ins. Co. v. Tyler, 16 Wend. 285; Trader Ins. Co. v. Robert, 9 Wend. 404; Power

et al. v. Ins. Co. 19 La. 23; Tittemore v. Ins. Co. 20 Vt. 546.

That a policy of insurance is a personal contract of indemnity with the insured: McCarty v. Com. Ins. Co. 17 La. 365; Leavitt v. W. M. & F. Ins. Co. 7 Rob. 351; Marchesseau v. Ins. Co. 1 Rob. 438; Wyman v. Prosser, 36 Barb. 368; Strong v. Ins. Co. 10 Pick. 49; Wilson v. Hill, 3 Met. 66; Carpenter v. Ins. Co. 16 Pet. 495; Adams v. Ins. Co. 29 Me. 292; 3 Benn. Ins. Cas. 31.

Evidence offered tending to show that had the underwriters known the premises contained machinery for carrying on a business so hazardous as to be uninsurable, they would not have taken the risk, should have been admitted: Webber v. Eastern R. R. Co. 2 Met. 147; Luce v. Dorchester Ins. Co. 105 Mass. 297; Hawes v. New England Ins. Co. 2 Curtis C. C. 229; Mulvey v. Mohawk Valley Ins. Co. 5 Gray, 541; Merriam v. Middlesex Ins. Co. 21 Pick. 162; Daniels v. Hudson Riv. Ins. Co. 12 Cush. 416; McLanahan v. Universal Ins. Co. 1 Pet. 170; Mitchell v. Home Ins. Co. 32 Iowa, 421; Kern v. St. L. Mut. Ins. Co. 40 Mo. 19.

Mr. HENRY J. PEET and Mr. PERRY H. SMITH, JR., for appellants; that the answers having denied any indebtedness, a court of chancery had no jurisdiction to try that traverse, cited Sherwood v. Ins. Co. 12 How. 136; Hitt v. Ormsbee, 14 Ill. 233; Rodman v. Henry, 17 N. Y. 484; Walker's Ch. R. 2; Story's Eq. Jur. § 74; N. Y. Code § 299; Rev. Stat. N. J. 76; Rev. Stat. N. C. 209; 3 Corwin (Ohio) Chap. 1,202; Welch v. P. Ft. W. & C. R. R. Co. 11 Ohio 573.

That the insured cannot recover an amount greater than their insurable interest: Smith v. Columbia Ins. Co. 17 Pa. St. 253; Strong v. Ins. Co. 10 Pick.; Catron v. Ins. Co. 6 Humph. 176; Reed v. Mut. Safety Ins. Co. 3 Sandf. 54; Smith v. Williams, 2 Caines' Cas. 110.

That there were material concealments regarding title and interest: Catron v. Ins. Co. 6 Humph. 176; Columbian Ins. Co. v. Lawrence, 2 Pet. 25; Lycoming Ins. Co. v. Stockbomer, 2 Casey, 199; Lycoming Ins. Co. v. Mitchell, 48 Pa. St. 368; Elliott v. Lycoming Ins. Co. 66 Pa. St. 22; Lee v. Howard

Ins. Co. 11 Cush. 224; Com. Ins. Co. v. Mehlman, 48 Ill. 313; Wethrall v. City Ins. Co. 16 Gray, 276; Tomlinson v. Monmouth Mut. Ins. Co. 47 Me. 232; Flanders on Fire Insurance, 68.

That the suit was prematurely brought, the loss not being then due and payable by the terms of the policies: Chamberlain v. McCall, 2 Yeates, 281; Bryant v. Ins. Co. Pick. 131; Davis v. Davis, 49 Me. 282.

Upon the question of payment of interest decreed by the court: Delonguemare v. Ins. Co. 2 Hall, 589; Nevins v. Rockingham Ins. Co. 25 N. H. 22.

Messrs. MATTOCKS & MASON and Mr. GEO. W. SMITH, for the Central Nat. Bank, appellee; contending for the equitable jurisdiction of the court, cited Rev. Stat. 1874, 203; Gage v. Smith, 79 Ill. 219; Bramhall v. Ferris, 14 N. Y. 45; Donovan v. Finn, 1 Hopk. Ch. 59; Hadden v. Spader, 20 Johns. 554; Pettit v. Chandler, 3 Wend. 621; Bailey v. Burton, 8 Wend. 339; Tappan v. Evans, 11 N. H. 326; Beck v. Burdett, 1 Paige Ch. 309; Weed v. Pierce, 9 Cowen, 722; Durand v. Hankesson, 39 N. Y. 287; Grant v. Redd, 4 B. Mon. 178.

A court of equity having properly acquired jurisdiction over the subject matter, will do final and complete justice between the parties: Taylor v. Mer. Fire Ins. Co. 9 How. 405; Motteaux v. London Assurance Co. 1 Atkins, 545; Perkins v. Washington Ins. Co. 4 Cowen, 646; 1 Duer, 66; Fireman's Ins. Co. v. Powell, 13 B. Mon. 311; Phœnix Ins. Co. v. Mitchell, 67 Ill. 43; Wood on Fire Insurance, 32.

Against the objection that the suit was prematurely brought, because the sixty days for payment of losses had not expired: Ætna Ins. Co. v. Maguire, 51 Ill. 342; Aurora Fire Ins. Co. v. Eddy 55 Ill. 213; Ill. M. F. I. Co. v. Archdeacon, 82 Ill. 236.

That the policies were not void by reason of non-insurable interest in the assured, and because hazardous non-insurable material and machinery were used in the building: Phœnix Ins. Co. v. Mitchell, 67 Ill. 43; Reaper City Ins. Co. v. Jones, 62 Ill. 458; Insurance Co. v. Slaughter, 12 Wall. 404; Aurora

Ins. Co. v. Eddy, 49 Ill. 106; Ins. Co. of North America v. McDowell, 50 Ill. 120; New England F. & M. Ins. Co. v. Wetmore, 32 Ill. 221; Schmidt v. Peoria M. & F. Ins. Co. 41 Ill. 296.

That a clause in a policy forbidding a sale of the property is not affected by a mortgage of the same: Commercial Ins. Co. v. Spankneble, 52 Ill. 53; Smith v. Mutual F. Ins. Co. 50 Me. 96; Masters v. Madison Ins. Co. 11 Barb. 624; Rollins v. Columbia Ins. Co. 5 Foster, 204; Ayers v. Hartford Ins. Co. 17 Iowa, 180; Fireman's Ins. Co. v. Cong. Rodeph Sholom, 80 Ill. 558; Aurora F. Ins. Co. v. Eddy, 55 Ill. 213; Lycoming F. Ins. Co. v. Jackson, 83 Ill. 302.

That if any of the conditions in the policy had been violated, it was the duty of the company to make known the ground of objection at the time of adjustment of the loss: Atlantic Ins. Co. v. Wright, 22 Ill. 462; Peoria F. & M. Ins. Co. v. Lewis, 18 Ill. 553.

As to what constitutes an insurable interest: Commercial Ins. Co. v. Spankneble, 52 Ill. 53; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Atlantic Ins. Co. v. Wright, 22 Ill. 462; Mitchell v. McDougall, 62 Ill. 498; Phœnix Ins. Co. v. Mitchell, 67 Ill. 43; Vansant v. Allmon, 23 Ill. 30.

The pretended chattel mortgages were void as against creditors: McDowell v. Stewart, 9 Chicago Legal News, 181; Frank v. Miner, 50 Ill. 444; Porter v. Dement, 35 Ill. 478; Gross' Stat. 67, §§ 2, 3.

That the property in dispute is presumed to belong to the husband, and the burden of proof is upon the wife. to show affirmatively that it is her separate property: Jassoy v. Delius, 65 Ill. 469; Indianapolis R'y Co. v. McLaughlin, 77 Ill. 275; Reeves v. Webster, 71 Ill. 307; Patton v. Gates, 67 Ill. 164; Wilson v. Loomis, 55 Ill. 352; Elijah v. Taylor, 37 Ill. 247; Wortman v. Price, 47 Ill. 22; Brownell v. Dixon, 37 Ill. 187; Seitz v. Mitchell, 4 Otto, 580; Kahn v. Wood, 82 Ill. 219; Sweeney v. Damron, 47 Ill. 450; McLourie v. Partlow, 53 Ill. 340; Haines v. Haines, 54 Ill. 74; Bridgeford v. Riddell, 55 Ill. 261.

That a subsequent creditor may attack a conveyance from

husband to wife if the conveyance was made to defraud creditors and the husband insolvent at the time: Bridgeford v. Riddell, 55 Ill. 261; Moritz v. Hoffman, 35 Ill. 553; Phelps v. Curts, 80 Ill. 109; Mills v. Morris, 1 Hoffman's Ch. 419; Richards v. Smallwood, Jacobs, 556; Rigway v. Underwood, 4 Wash. C. C. 137; Sexton v. Wheaton, 8 Wheat. 229; Savage v. Murphy, 34 N. Y. 508; Case v. Phelps, 39 N. Y. 164; 10 N. Y. 227; Seward v. Jackson, 8 Cowen, 406; 19 Barb. 450; 7 Bos. 480; Jones v. King, 10 Chicago Legal News, 275; Bump on Fraudulent Conveyances, 331; Hook v. Monroe, 17 Iowa, 197; Rev. Stat. 251.

That the insurance companies were liable to pay interest from the time the money became due: Knickerbocker Ins. Co. v. Gould, 80 Ill. 388; Peoria F. & M. Ins. Co. v. Lewis, 18 Ill. 553.

As to testimony of the inflammable nature of the materials used in the building, and that they did not increase the hazard: Aurora Fire Ins. Co. v. Eddy, 55 Ill. 213; Wood v. Northwestern Ins. Co. 46 N. Y. 421 ; Wood on Fire Insurance, 366.

That the rights of the intervening petitioners were subordinate to those acquired by this appellee: 2 Johns. Ch. 156; 1 Johns. Ch. 302, 575; 8 Chicago Legal News, 379.

Upon the question whether the machinery attached to the building was real or personal property: Swift v. Thompson, 9 Conn. 63; Gale v. Ward, 14 Mass. 352; Walker v. Sherman, 20 Wend. 636; Sheldon v. Edwards, 35 N. Y. 283; Ford v. Cobb, 20 N.Y. 348; Dunham v. Sankey, 38 Iowa, 369; 2 Kent Com. 409; Sowdan v. Craig, 26 Iowa, 156; Ballou v. Jones, 37 Ill. 95; Winslow v. Mer. Ins. Co. 4 Met. 306; Kelly v. Austin, 46 Ill. 156; Arnold v. Crowder, 81 Ill. 56; Jones on Mortgages, 444.

Messrs. Grant & Swift, for Travelers Insurance Co., appellee; argued that the court had jurisdiction, and would retain it for all purposes, and cited 2 Story's Eq. 1216 b.; Steere v. Hoagland, 39 Ill. 264; Neute v. Duke of Marlborough, 2 Myl. & C. 407; Hodden v. Spader, 20 Johns. 554; Craig v. Hone, 2 Edw. Ch. 566; 2 Barb. Ch. Pr. 147; Rev. Stat. Chap. 22, § 49; Savage v. Berry, 3 Scam. 545; People ex rel. v. Chicago, 53

Ill. 424; Sherlock v. Winnetka, 59 Ill. 389; Morgan v. Roberts, 38 Ill. 65; Mitchell v. McDougall, 62 Ill. 498.

Upon the remedies of the holder of the chattel mortgage: Herman on Chattel Mortgages, § 206; Packard v. Kingman, 11 Iowa, 219; Devens v. Bower, 6 Gray, 126; Jackson v. Hull, 10 John. 481; Norwich Ins. Co. v. Boomer, 52 Ill. 442; Dupuy v. Gibson, 36 Ill. 197.

That there was no concealment sufficient to avoid the policies, there being no written application; and that unused machinery did not increase the hazard: Lycoming Ins. Co. v. Jackson, 83 Ill. 302; Schmidt v. Peoria M. & F. Ins. Co. 41 Ill. 296; Andes Ins. Co. v. Shipman, 77 Ill. 189; Peoples Ins. Co. v. Spencer, 53 Pa. St. 353; James River Ins. Co. v. Merritt, 47 Ala. 387; Wood on Fire Ins. 434.

That provisions of forfeiture in policies of insurance are to be strictly construed: Wood on Fire Insurance, 141; Kentucky Mut. Ins. Co. v. Jencks, 5 Ind. 96.

As to insurable interest of person who has the legal or equitable title to property insured: Stephens v. Illinois Ins. Co. 43 Ill. 327; Cone v. Niagara Ins. Co. 60 N. Y. 619; Strong v. Manufacturers Ins. Co. 10 Pick. 40; Insurance Co. v. Barney, 20 Wall. 159; Phœnix Ins. Co. v. Mitchell, 67 Ill. 43 ; Eastern R. R. Co. v. Relief Ins. Co. 105 Mass. 570; Lycoming Ins. Co. v. Jackson, 83 Ill. 303; Wyman v. Peoples Ins. Co. 1 Allen, 301; Home Mut. Life Ins. Co. v. Garfield, 60 Ill. 124; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Rice v. Provincial Ins. Co. 7 U. C. (C. P.) 548; Ayres v. Home Ins. Co. 21 Iowa, 185; Washington Ins. Co. v. Hayes, 17 Ohio St. 432; Waring v. Loder, 1 Rob. 55; Wood on Fire Insurance, 475; Ill. Cen. R. R. Co. v. McCullough, 59 Ill. 166; Brown v. Gaffney, 28 Ill. 150.

To avoid a policy on the ground of alienation, the fact of such alienation must be shown, and the burden of proof is upon the insurers: Catlin v. Springfield F. & M. Ins. Co. 1 Sumner, 434; Orrell v. Hampden F. & M. Ins. Co. 13 Gray, 431; Shepherd v. Union Ins. Co. 38 N. H. 232.

In support of the ruling of the court excluding certain questions asked of witnesses: " Would you have insured the prop-

erty had you known there was a tax-deed outstanding against the property?" etc.: Sturm v. Williams, 6 Jones & S. 325; Eureka Ins. Co. v. Robinson, 56 Pa. St. 256; Schmidt v. Peoria F. & M. Ins. Co. 41 Ill. 296; Washington Life Ins. Co. v. Haney, 10 Kan. 525; Wood on Fire Insurance, 858; Leē v. Howard Fire Ins. Co. 11 Cush. 324; May on Insurance, § 374.

Upon the question of the machinery being fixtures, and passing with the real estate: Hoskin v. Woodward, 45 Pa. St. 42; Brenan v. Whitaker, 15 Ohio St. 446; *Ex parte* Montgomery, 4 Irish Ch. (N. S.) 520; Citizens' Bank v. Knapp, 22 La. An. 117; Theurer v. Neutre, 23 La. An. 749; Sparks v. State Bank, 7 Ind. 468; Græme v. Cullen, 23 Gratt. 266; 1 Jones on Mortgages, § 435; In re Sands' Ale Brewing Co. 3 Biss. 175.

That insurance is a personal contract: Cummins v. Cheshire Mut. F. Ins. Co. 55 N. H. 457; Wood on Fire Insurance, § 436; Carpenter v. Ins. Co. 16 Pet. 495; Lucena v. Crawford, 2 Bos. & Pull. 240; Bernheim v. Beer, Cent. Law Jour. 485; May on Insurance, 5; Wilson v. Hill, 3 Met. 66; Sadlers' Co. v. Budcock, 2 Atk. 554.

BAILEY, J.    On the 27th day of January, 1875, the Central National Bank of Chicago recovered a judgment in the Superior Court of Cook county against Albion K. Norris and the Norris Planing Mill and Lumber Company, for the sum of $4,778.59 and costs.    On this judgment an execution was duly issued to the sheriff of Cook county, and by him returned wholly unsatisfied.    Afterwards, on the fifth day of April, 1875, the Central National Bank filed in said court a creditor's bill against said judgment debtors, and Eliza T. Norris, wife of said Albion K. Norris, Leavitt Fifield, Nathaniel Y. Trickey and the Travelers' Insurance Company of Hartford, Connecticut, seeking thereby to subject to the payment of said judgment certain equitable assets of the judgment debtors.

The property sought to be reached by the bill consisted of certain lots of land in Chicago, together with a planing mill situate thereon, and the machinery, engines, boilers and other personal property belonging thereto.    The situation of this

property as disclosed by the record was substantially as follows: On the 24th day of April, 1871, Albion K. Norris, claiming to act as the agent of his wife, purchased said property of the Fifth National Bank of Chicago, for the sum of $24,000, and procured a conveyance thereof to Mrs. Norris.    To raise $15,000 of the purchase money he borrowed that sum of the Travelers' Insurance Company, giving his own personal bond therefor in the penal sum of $30,000, conditioned for the payment of the money so borrowed in five years, with ten per cent. interest, payable semi-annually, and to secure said bond Norris and wife executed to one Julius White, as trustee, a deed of trust of said premises, which, with the consent of the Fifth National Bank, was made a first lien thereon.    To secure to said bank the balance of said purchase money, Norris and wife also executed a junior deed of trust of said premises to one William H. King, as trustee.

At the time of this purchase Norris was insolvent, and this fact seems to have furnished the reason for taking the title to the property in the name of Mrs. Norris.    Shortly after the purchase, Mr. Norris took possession of the planing mill and its equipments, and run and operated the same apparently in his own behalf and for his own benefit, using in so doing the sum of $6,000, loaned him by a friend in Boston.    In September, 1871, a fire occurred by which said planing mill and machinery were partially destroyed.    The property at the time was insured for a considerable amount, a part of said insurance being for the benefit of the Travelers Insurance Company, but owing to the insolvency of the insurance companies consequent upon the great fire of October 9th, 1871, only a small amount of insurance money was realized.    The mill was subsequently repaired and supplied with new machinery by the use of said insurance money, and other funds advanced, as Mrs. Norris claims, by her, out of moneys received from her father's estate.

Afterwards, in pursuance of an agreement made when said $15,000 loan was negotiated, Mrs. Norris, to further secure said loan, on the 9th day of December, 1871, executed to the Travelers Insurance Company a chattel mortgage of certain of the machinery and personal property in said planing mill,

which chattel mortgage was renewed on the 15th day of June, 1873, and again on the 16th day of June, 1875. The renewal of June 15th, 1873, was never recorded, and the renewal of June 16th, 1875, though recorded, was not executed until after the service of process in this suit.

Mr. Norris continued in charge of the business of the planing mill until sometime in the year 1872, when he, together with certain other persons, organized a corporation under the name of "The Norris Planing Mill and Lumber Company," which corporation, with said Norris as its president, thereafter carried on said business under a lease from Mrs. Norris.

About the first of March, 1873, Leavitt Fifield, as he claims, loaned for the period of one year the sum of about $10,000 in cash, to be used in the business of said company, for which he was to receive interest at the rate of ten per cent. per annum, and in consideration of such loan it was arranged that the business of the planing mill should be carried on by said corporation, with Norris as its president and Fifield as its secretary, and that after paying Mrs. Norris an annual rent of $3,600, and defraying all the other expenses and liabilities of said business, the net profits should be divided equally between Fifield and Mrs. Norris. By way of security for this loan, Norris and wife conveyed to Fifield said planing mill and all the machinery therein. Sometime after the commencement of this suit Fifield conveyed said property to his brother, Elbridge G. Fifield and one A. T. Hall—six-sevenths to the former and one-seventh to the latter. Afterwards the interest of said Hall was conveyed to said Elbridge G. Fifield, thus vesting in the latter the entire interest acquired under the deed to Leavitt Fifield. These deeds were both absolute on their face, but were understood by the parties thereto to be given merely as security for money loaned. A considerable portion of the Fifield loan seems to have been paid, and the record discloses a controversy between the Fifields and Mr. and Mrs. Norris as to whether any and how much remains in arrears, the former claiming a balance of from $6,000 to $7,000, and the latter claiming satisfaction thereof in full.

After the termination of the Fifield contract, and about the

first of July, 1874, Nathaniel Y. Trickey claims to have loaned Mrs. Norris about $12,000, taking as security a portion of the machinery in the planing mill, and about the first of February, 1875, this loan was changed into the form of an absolute purchase of said machinery from Mrs. Norris, with an agreement on the part of said Trickey to keep said machinery insured for the benefit of the Travelers Insurance Company, he having taken said property subject to the chattel mortgage thereon to said company.

The good faith of these transactions with both Trickey and the Fifields is called in question by the complainant, it being claimed that said loans were merely fictitious, and the conveyances to them without consideration, and that they as well as Mrs. Norris had no beneficial interest in said property, but in fact held the same for the benefit of Mr. Norris, and under a secret trust for his use.

Such being the situation and condition of the property in controversy, on the fourth day of October, 1876, and while this suit was pending and undetermined in the court below, a fire occurred by which said planing mill was totally destroyed, and the machinery, fixtures and personal property therein destroyed or greatly damaged. At the time of said fire said property was insured to the amount of about $21,000, by policies of insurance issued by some thirty different insurance companies. A portion of these policies, amounting in the aggregate to something over $11,000, were issued to Mrs. Norris. These policies seem to have been obtained through the instrumentality of Mr. Norris, acting as the agent, or pretended agent, of his wife. Of these policies running to Mrs. Norris, a part had written upon their face the following clause: "Loss, if any, payable to Julius White, trustee, as his interest may appear," and the residue were without such clause written therein. The remaining portion of said policies, amounting in the aggregate to nearly $10,000, were issued to said Trickey, and all or most of them had written upon their face a similar clause, making the loss, if any should occur, payable to said Julius White, trustee, as his interest might appear.

Within a few days after said fire, proofs of loss were duly

made by the insured under all of these policies, and on the 26th day of October, 1876, the Central National Bank, the complainant in this suit, filed an amended and also a supplemental bill, whereby, in addition to the parties to the original bill, Julius White and various other persons, and also each of the several insurance companies issuing said several policies of insurance, were made parties defendant. By these bills the complainant prayed for the appointment of a receiver, and the sale by such receiver of the lots on which said planing mill stood, subject to any valid lien there might be found to be thereon, and in case sufficient should not be realized from such sale, to satisfy the complainant's said judgment, that the proceeds of said insurance or such part thereof as should be necessary, might be applied to the payment of the residue thereof.

The Travellers Insurance Company and Julius White, answered said several bills, setting up in their answer the rights vested in said company by said deed of trust to said White, said chattel mortgage, and the clauses in said several policies of insurance, making the loss thereunder payable to said company, and afterwards filed their cross-bill, praying that an account be taken of the moneys payable to said company under said policies; that a receiver be appointed to collect the same, and that said insurance companies be ordered to pay over to such receiver the various sums found to be due from them respectively. On filing the cross-bill a receiver was appointed as therein prayed for.

These several insurance companies appeared and answered said original, supplemental and cross-bills, admitting the execution of their several policies, but denying their liability thereunder, and setting up a variety of defenses growing out of the special conditions and provisions of their respective policies, and of various acts and neglects of the parties insured; and claiming and insisting upon their right to have the question of their liability tried and determined in a court of common law. Notwithstanding the defenses thus set up, and the claim of right thus made to a trial at law, the court below overruled said claim, and proceeded to try and determine the liability of said companies under said policies, and on such trial disallowed

each and every of said defenses, and rendered a decree against each company for the face of its policy, less certain payments already made by part of the companies for a previous loss, and ordered each company to pay to the receiver the amount so found due from it within twenty days; or in default of payment that execution issue as at law.

From this decree eighteen of these companies have prosecuted their appeals to this Court. Although each of these companies has prayed its appeal separately, and filed its separate appeal bond, only one transcript of the record has been filed in this Court, the same being by agreement between the several appellants made use of for the purposes of their respective appeals.

The principal error assigned by these various appellants, and the only one we need consider, is the refusal of the court below to remit the question of the liability of these various companies under their respective policies, to a court of common law for trial, and its decision to try and determine all of these matters in the court of chancery.

Section 49, Chap. 22, R. S. 1874, being the section under which the bill in this case must be maintained, if at all, against these companies, provides as follows:

"Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or equity, and shall have been returned unsatisfied in whole or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, *to compel the discovery* of any property or thing in action belonging to the defendant, and of any property, money or thing in action due to him, or held in trust for him, and to prevent the transfer of such property, money or thing in action, or the payment or delivery thereof to the defendant. * * * The court shall have power to *compel such discovery*, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgments, out of any personal property, money or thing in action belonging to the defendant, or held in trust for him, * * * which shall be *discovered* by the proceedings in chancery whether the same was originally liable to be taken in execution at law or not."

A creditor's bill filed under the provisions of the foregoing section is in many of its essential features a bill of discovery. Its object is to " *compel the discovery* " of property, money or things in action in the hands of third persons belonging to the judgment debtor, or in which he is beneficially interested, and to decree payment of the judgment out of the assets so discovered. A bill of discovery, properly and technically so called, is a bill to obtain by means of a sworn answer of the defendant, a discovery of facts resting in his knowledge, or of deeds, writings or other things in his custody or power.    If upon such a bill no discovery is obtained, the suit fails and the bill must be dismissed.

Although a creditor's bill filed pursuant to the statute is a bill for relief as well as discovery, the relief seems to be made dependent upon the discovery.   There can be no doubt that when the answer to such bill discovers assets of the judgment debtor in the hands of the defendant, the court of chancery may, by any of the methods known to ordinary chancery practice, apply such assets to the payment of the judgment. Where, however, the answer not only fails to discover, but denies the possession of assets, can the answer be traversed, and the court of chancery proceed to try such traverse, and if upon such trial the defendant is proved to be in fact in possession of assets, grant relief by decreeing the application of the same to the satisfaction of the judgment?   The plain language of the statute seems to indicate a negative answer.   It is not denied that where a bill supplementary to execution, in the nature of a creditor's bill, is filed for the purpose of setting aside a fraudulent conveyance of property by the judgment debtor, or of removing such conveyance out of the way of the execution, the court of chancery obtains jurisdiction on the ground of fraud, as against all parties chargeable in any way with its perpetration.   In such case the strong arm of the court of chancery may be extended to wrest from the possession of any or all of the guilty parties the property thus fraudulently conveyed, and hand it over to the creditor to whom it rightfully belongs.   Where, however, as to a particular defendant no fraud is charged, and no other ground of

equitable jurisdiction is set up beyond a mere allegation of possession of assets of the judgment debtor, or indebtedness to him, and the answer traverses such allegation, we see no ground upon which the bill can be further maintained as against such defendant.

In the present case, the bill, so far as it seeks to charge Mrs. Norris, Trickey and the Fifields, is based upon an allegation of fraud. It is alleged that the conveyances of the planing mill and its equipments to them were fraudulent, and that they were holding the same upon a secret trust for Mr. Norris, and in fraud of his creditors. As to these defendants, the bill, if sustained by the proof, was clearly maintainable. As to the insurance companies, however, no fraud is charged; the only claim is that they are liable upon certain insurance policies issued by them to Trickey and Mrs. Norris, and that the moneys so owing from them, ought in equity to be applied to the payment of complainants' judgment against Mr. Norris. Even if procuring these policies in the name of Mrs. Norris and Trickey was fraudulent, there is no pretense that the insurance companies participated in such fraud. Had these companies, by their answer admitted their liability, unquestionably the court might have decreed payment to such of the parties as appeared equitably entitled to the insurance money. Instead of admitting their liability, however, they answered under oath, denying it and setting up a variety of defenses against the claims made by the policy holders. After the filing of these answers we think, as against them, the court of chancery should have proceeded no farther.

The course here indicated would have merely resulted in changing the forum in which to litigate the liability of these companies. As against the policy holders the court of chancery had undoubted jurisdiction. The possession by them of the policies was charged in the bill to be upon a secret trust for the use of the judgment debtor, and consequently fraudulent as to complainant, and the court seems to have found such allegations sustained by the proofs. The court then had ample power to compel the assignment and delivery of the policies to the receiver, and to clothe him with authority to

bring suits thereon at law. A court of law would have been a more appropriate tribunal for such litigation. There the parties could have had the benefit of a trial by jury, and the suit upon each policy could have been tried by itself, disencumbered and disembarassed of all questions growing out of the trial of other suits between other parties.

The usual methods by which courts of chancery in creditors' suits subject mere choses in action of the judgment debtor to the payment of the judgment, are by directing a sale of the chose in action itself and applying the proceeds, or by placing it in the hands of a receiver, with power on his part to resort to an appropriate tribunal for its enforcement or collection. The practice of enforcing such collection directly in the creditor's suit, if within the jurisdiction of the court, would be attended with very great inconveniences. Not only is the debtor thereby deprived of his right to a trial by jury, but the trial of the issues presented by such individual debtor becomes unavoidably encumbered and embarrassed by a multitude of other issues presented in the cases of the other parties whose suits must be tried in the same proceeding. The record in the present case is a fair illustration. We have here a document covering over twelve hundred pages, and embracing in addition to the creditor's suit itself a record of thirty suits against that number of insurance companies, for the collection of insurance money due under thirty different policies, yet so involved are all of these proceedings with each other that it is impossible to pass upon the rights of any one of these companies without investigating and considering the entire record. No one of these companies could have brought its own case to this court for review without bringing up the entire record, at an expense nearly or quite equal to the entire amount involved, and compelling this court, in order to a proper adjudication of the case, to travel over this vast maze of pleadings and evidence, of which by far the greater part would have no bearing whatever upon the questions presented by the appeal, but would only tend to confuse and obscure those portions of the record really bearing upon the case.

It is a circumstance worthy of note that the learning and

industry of the numerous able counsel, employed in this case, have failed to bring to our attention any authority directly supporting the practice adopted by the learned chancellor. Recourse is had to the familiar principle that, equity having obtained jurisdiction for one purpose, will ordinarily retain it for the purpose of administering complete and adequate relief. In illustration of this principle, we are cited to several cases where the aid of a court of equity has been invoked to compel the specific performance of a contract to issue a policy of insurance, and the court having obtained jurisdiction for that purpose, and a loss having intervened, has gone on and decreed payment of the loss. It will be observed that in all such cases the ground of jurisdiction has grown out of the relations or conduct of the very parties as against whom jurisdiction is retained for purposes of general relief. We are cited to no case where equitable jurisdiction having once been obtained as between given parties, has been retained as a basis for granting relief against other parties whose conduct and relations have not been such as, of themselves, to afford ground for equitable interposition.

So far as appears these insurance companies had committed no act by virtue of which they could be sent to a court of chancery for trial. They had dealings it is true with people whose conduct had become a proper subject of investigation by a court of chancery. For that conduct they, so far as appears, were in no way responsible. They were guilty of no fraud. The claims sought to be enforced against them were purely matters of legal cognizance. Upon what principle their right to have these cases tried by a jury, and according to the established course of the common law, should be denied them, we are unable to discover. An abridgment of their rights cannot be justified on the ground that other parties with whom they have been so unfortunate as to have dealings, have been guilty of misconduct. We think the court below erred in rendering its decree against appellants, and that as to each of said appellants the decree must be reversed.

We are also unable to see how the court below could obtain jurisdiction to collect these policies in equity, under the cross-

bill of the Travelers Insurance Company. By the clause inserted in the policies in which that company was interested, Julius White was made a usee to the extent of the incumbrance of his deed of trust. To that extent he had a right to control the proceeds, when collected, but we think the collection should have been made through the instrumentality of suits at law. The proper practice would have been to compel the assignment and delivery of all of these policies to the receiver, and allow him to proceed at law to enforce their collection. In this way, if these companies had any defenses, such defenses could be properly presented, and adjudicated. The proceeds when collected could be distributed by the court of chancery, according to the equities of the parties.

The cause will be remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.